`IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NWABUEZE OKOCHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **AND RECOMMENDATION** |
| | ) | |
| PATRICIA L. ADAMS, M.D., | ) | 1:06CV275 |
| K. PATRICK OBER, M.D., | ) | |
| WILLIAM B. APPLEGATE, M.D., | ) | |
| M.P.H., WAKE FOREST | ) | |
| UNIVERSITY SCHOOL OF | ) | |
| MEDICINE, and WAKE FOREST | ) | |
| UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Petition for Attorneys' Fees and Costs (docket no. 94). In a Judgment and Order dated February 1, 2008, the district court adopted this court's Recommendation dated October 11, 2007, that summary judgment be entered in Defendants' favor (docket no. 90). After Judgment was entered, Defendants filed the instant Petition for Attorneys' Fees and Costs. Plaintiff has filed no response in opposition to the petition for fees and costs. By Order dated December 29, 2008, the district court referred the petition to the undersigned magistrate for Review and Recommendation pursuant to Rules 54(d)(2)(D) and 72(b) (docket no. 106).

In support of their petition, Defendants have submitted the declaration of defense counsel Elizabeth V. LaFollette of Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. ("Brooks Pierce"). The declaration provides the names, educational

background, and professional experience of four of the Brooks Pierce attorneys who have represented Defendants in this action. In addition, the annual billing rates are provided for each of the attorneys. Detailed, itemized invoices are attached to Ms. LaFollette's declaration, showing fees and expenses for this matter from the commencement of the litigation in March 2006 through January 30, 2008. Defendants request attorneys' fees in the amount of $169,210.00. Defendants also request reimbursement of $290.40, the cost of the transcript of the preliminary injunction hearing.

BACKGROUND

The long and tortuous litigation in this matter is detailed in this court's Recommendation dated October 11, 2007. In short, Plaintiff, a Nigerian citizen, received an $18,000 minority recruitment scholarship to attend the Wake Forest University School of Medicine (hereinafter "WFUSM" or "School of Medicine"). On his medical school application, Plaintiff represented that he was a permanent resident alien and was therefore legally entitled to be in the United States, which was a prerequisite for admission to the medical school. In July 2002, Plaintiff matriculated at WFUSM in the Class of 2006. By December of Plaintiff's first year in school, the School of Medicine still had not received proper documentation of his residency status despite repeated requests from the school administration to Plaintiff to provide this information. Plaintiff was directed to provide the proper documentation by February 14, 2003. The day before this deadline, Plaintiff

2

requested an emergency leave of absence to be with his mother who he said was critically ill in Nigeria. The School of Medicine granted the request.

Plaintiff, however, never left the United States and, in fact, continued to mislead the School of Medicine both about his whereabouts and his mother's condition. In March 2003, Plaintiff was granted an extended leave of absence until the start of classes in July 2003, and he was asked to provide documentation of his current immigration status by July 1, 2003. Plaintiff did not return to school in July 2003, and he informed school officials by email that his mother had been given six months to live and that he had contracted malaria while attending to her.[1]

During the leave of absence, the School of Medicine contacted the United States Citizenship and Immigration Service and learned that from March 1992 through May 2003 Plaintiff was not legally entitled to be in the United States. The School of Medicine also discovered that Plaintiff had been disbarred as an attorney by the State of Ohio as a result of his dishonesty and unethical conduct. Based on the material misrepresentation made by Plaintiff on his medical school application and the continuing concerns about his truthfulness and credibility, the School of Medicine dismissed Plaintiff from school in October 2003. Plaintiff never returned to WFUSM, nor did he respond to the letter notifying him of dismissal until

---

[1] At the preliminary injunction hearing, Plaintiff admitted that he had actually traveled extensively throughout the United States, not to Nigeria, during this period and that he had contracted malaria in Florida. (*See* Rec. Oct. 11, 2007, docket no. 80 at 7).

3

October 24, 2005, over two years later, when he wrote a letter complaining about his dismissal from the School of Medicine.

Twenty-seven months after his dismissal from the School of Medicine, on March 24, 2006, Plaintiff brought the instant action, alleging, inter alia, violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1985. Plaintiff originally was represented by counsel, but his attorney's request to withdraw was granted on November 14, 2006 (docket no. 50).[2]

DISCUSSION

Under 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce [42 U.S.C. § 1981 or § 1985 or Title VI], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Attorneys' fees should not be awarded to the prevailing defendant against the non-prevailing plaintiff, however, unless the court finds that the plaintiff's claim was "frivolous, unreasonable, or groundless," or that "the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978); *see Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam) (applying *Christiansburg* standard to cases arising

---

[2] In the motion to withdraw, Plaintiff's attorney stated that "[c]ounsel and Plaintiff . . . have developed certain irreconcilable differences with respect to [c]ounsel's continued prosecution of this matter." (Mot. to Withdraw, filed August 15, 2006, docket no. 36). Counsel went on to state that "Plaintiff, unlike most litigants, has substantial legal experience, having practiced law for many years in the State and Federal Courts of Ohio, and as such, is more than capable of the continued prosecution of this matter before this Court, *Pro Se*." *Id.*

4

under section 1988).[3] While the *Christiansburg* standard is strictly construed in cases involving pro se plaintiffs, where the law underlying the plaintiff's claim is clear and there is no basis for a claim, it is not error for the district court to award the defendant attorneys' fees. *See DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999).

Defendants here contend that attorneys' fees are appropriate because Plaintiff's claims were "frivolous, unreasonable and without foundation from the beginning." (Def.'s Mem. Supp. Pet., 9.) Defendants contend that Plaintiff was dismissed from the School of Medicine because he was not truthful about his residency status and the School had questions about Plaintiff's character and truthfulness. These doubts were substantiated, according to Defendants, during the preliminary injunction hearing when Plaintiff admitted that he did not travel to Nigeria to attend to his sick mother, despite his contrary representations to school administrators. Furthermore, as noted by this court in the Recommendation dated October 11, 2007, Plaintiff failed to put forth any evidence that he was qualified to be a student at WFUSM or, indeed, that he was discriminated against in any way by Defendant: "Plaintiff has failed to make a prima facie case of discrimination based on race, national origin or alienage because he has not demonstrated that he met

---

[3] In *Christiansburg*, the Supreme Court was actually interpreting section 706(k) of Title VII of the Civil Rights Act of 1964, which also permits the district court to award "a reasonable attorney's fee" to the "prevailing party." 42 U.S.C. § 2000e-5(k). In *Hughes*, the Supreme Court applied *Christiansburg* to cases arising under section 1988 as well.

5

the requirements for enrollment at WFUSM." (Rec. at 18-19). Plaintiff clearly knew, or should have known, that his case was without foundation.

The history of the litigation, as evidenced by the docket sheet and pleadings in this court, shows a pattern on the part of Plaintiff to obfuscate the facts and delay the proceedings, even as it was clear that he had no case. Plaintiff insisted on moving for a preliminary injunction and having a hearing on the motion, even though his own lawyer, who later withdrew, admitted during the hearing: "Your Honor, as a professional, I don't believe that there is sufficient evidence to support the granting of a preliminary injunction and that's all . . . I've got to say about that. I don't think that there has been evidence presented to support the motion for a preliminary injunction." (Tr. Prel. Inj. Hr'g, June 8, 2006, docket no. 31 at 84). Following the hearing, the district court denied the motion by order dated June 9, 2006 (docket no. 23).[4]

Moreover, Plaintiff consistently ignored orders from the court, missed deadlines, and asked for repeated extensions. Plaintiff has made little effort to prosecute his case, though he did request, on at least six separate occasions, extensions of time to conduct discovery, to stay the proceedings, and/or to respond to Defendants' motion for summary judgment. Plaintiff did not seek to conduct any

---

[4] Plaintiff appealed this order as well. In an unpublished opinion, the Fourth Circuit Court of Appeals affirmed the district court's denial of the motion for a preliminary injunction, concluding "that [Plaintiff] failed to meet th[e standard for a preliminary injunction] with respect to any of the grounds used to support his motion for a preliminary injunction." *Okocha v. Adams*, 259 Fed. Appx. 527, 528 (4th Cir. 2007).

6

discovery until June 12, 2007, almost a full year after Defendants' first motion for summary judgment. Plaintiff's informal discovery requests at that time were also untimely because they did not allow sufficient time for completion before the discovery deadline. Despite numerous extensions, generously allowed by the court, Plaintiff never filed a brief in opposition to Defendants' summary judgment motion. After the district court entered judgment against him, Plaintiff filed a Notice of Appeal which was subsequently dismissed by the Fourth Circuit Court of Appeals for failure to prosecute (docket no. 102). Plaintiff, himself a trained, though disbarred, attorney, has taken full advantage of his right of access to the courts, yet he has never fully embraced the responsibilities which come with that right. Plaintiff's claims were supported by neither law nor fact. It is clear to this court that Plaintiff has abused the legal system by filing a frivolous claim which he continued to pursue even when he knew, or should have known, that it was groundless, and he is subject to the attorney fee provisions of section 1988.

In determining the amount of attorneys' fees to award, a court first must calculate the "lodestar" figure by multiplying the number of reasonable hours expended times a reasonable rate. To determine the reasonable hourly rate and reasonable number of hours to use in calculating the lodestar figure, the court is guided by the twelve *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions [presented by the lawsuit]; (3) the level of skill required to perform the legal service properly; (4) the preclusion of [other]

7

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Trimper v. City of Norfolk*, 58 F.3d 68, 73 (4th Cir. 1995); *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986).[5] A court is not required to engage in lengthy discussions concerning what portion of the award is attributable to each factor. In fact, the United States Supreme Court has noted that many of the *Johnson* factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate" and need not be further considered at all. *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983). In addition, when considering an attorneys' fees award against a pro se plaintiff in a case such as this one, courts must consider (1) the importance of ensuring access to the courts for plaintiffs with civil rights claims and (2) the financial means of the plaintiff. *Trimper*, 58 F.3d at 73; *Introcaso v. Cunningham*, 857 F.2d 965, 968 (4th Cir. 1988).

---

[5] As noted by the Fourth Circuit, some of the *Johnson* factors, such as numbers 3, 4, 8 and 10, have limited transferability as part of a formula for computing attorneys' fees for prevailing defendants, as opposed to plaintiffs. *See Arnold v. Burger King Corp.*, 719 F.2d 63, 68 n.8 (4th Cir. 1983).

The hourly rate included in an attorney's fee must be reasonable. *Rum Creek*, 31 F.3d at 175 (citing *Hensley*, 461 U.S. at 433). This reasonableness requirement is met "by compensating attorneys at the 'prevailing market rates in the relevant community.'" *Rum Creek*, 31 F.3d at 175 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The rate actually charged by the petitioning attorneys is relevant when conducting this analysis, particularly in a case such as this where the attorneys billed the Defendants at rates mostly discounted from their usual hourly rates and the rates were charged to and actually paid by Defendants.

As noted above, Ms. LaFollette's declaration sets out the educational background and professional experience of the four main Brooks Pierce attorneys who worked on the case for Defendants. James T. Williams has been a member of the North Carolina Bar since 1966, and in 2006 and 2007 his normal hourly rate was $460 to $480. In this case he billed Defendants at a discounted rate of $300 an hour. Elizabeth LaFollette has been a member of the North Carolina Bar since 1997, and in 2006 and 2007 her normal hourly rate was $215 to $250. In this case she billed Defendants at a rate of $225 an hour. Kathleen Gleason has been a member of the North Carolina Bar since 2003 and previously clerked for the Honorable Allyson K. Duncan. Ms. Gleason's normal hourly rate in 2007 was $175; she billed Defendants for her work in this case at a discounted rate of $150 an hour. Eliza Kendrick has been a member of the North Carolina Bar since 2006 and previously clerked for the Honorable N. Carleton Tilley, Jr. Ms. Kendrick's regular hourly rate

9

in 2007 was $165; she billed Defendants for her work in this case at a discounted rate of $150 an hour. The only evidence in the record reveals that the rates charged by Brooks Pierce in this case were discounted from the normal hourly rates charged by that firm in the Greensboro/Winston-Salem area, that the rates were charged to and actually paid by Wake Forest, and that the persons involved in charging and paying those rates believed them to be reasonable. *See Rum Creek*, 31 F.3d at 178-79. Given the experience and education of these four attorneys, and the court's knowledge of typical fees in the Middle District of North Carolina, the court finds the hourly rates submitted by the four Brooks Pierce attorneys to be reasonable.

To establish the number of hours reasonably expended, Defendants "should submit evidence supporting the hours worked . . . ." *Hensley*, 461 U.S. at 433. The number of hours should be reduced to exclude "hours that are excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. *Id.* at 434. In this case, Defendants have presented billing records showing that from May 2006 through January 2007 Brooks Pierce billed Defendants for a total of 891.50 hours. These records, prepared contemporaneously, are extremely detailed and specifically describe the work performed by each of the attorneys. The invoice amounts varied widely from month to month; the first four invoices, reflecting a major bulk of the work, ranged from approximately $16,000 up to almost $28,000. There were some months when little work was billed, and those invoices were for as little as $2,000 or less.

10

This court has had extensive involvement in this case and is intimately familiar with the issues involved. The court has reviewed the lengthy monthly billing invoices that Brooks Pierce sent to Defendants. The fees charged by defense counsel are reasonable, in light of the actions of Plaintiff. Again, it must be emphasized that Plaintiff did not even arguably have a claim against Defendants for discrimination. Plaintiff abused the legal process and engaged in dilatory tactics. Defendants were forced to respond to a score of meritless and untimely motions. The time and labor expended by Defendants' counsel were directly, and reasonably, in proportion to the various motions and claims made by Plaintiff. The invoices reflect little duplication of effort by defense counsel, and a clear attempt to use associates, with lower hourly rates, to do the majority of the research and writing tasks in this case, which represent the bulk of the billing. There is not even a hint in the invoices of an attempt to run up the fees in this case. While it is clear that Plaintiff's claim was without merit, Defendants obviously had to respond to the complaint and file appropriate motions. Plaintiff significantly increased the time and labor required to litigate this case by his motions and requests for extensions and stays. Moreover, in finally obtaining summary judgment against Plaintiff, Defendants' attorneys achieved complete success for their clients.

The invoices submitted by defense counsel appear to this court to reasonably calculate the time and labor expended in this matter. The court notes, however, that Ms. LaFollette's declaration covers the educational background and work experience

of only four attorneys, Mr. Williams, Ms. LaFollette, Ms. Kendrick, and Ms. Gleason. The invoices themselves reflect a small amount of work performed by other attorneys or support staff at Brooks Pierce. Specifically, seven of the monthly invoices reflect work done by other individuals, as the following chart shows:

| Month | Total Hrs | Bill Amt | Other Att'y Time (Hrs) | Adjusted Bill Amt |
|---|---|---|---|---|
| June 2006 | 135.00 | 24,776.50 | 17.00 | 22,860.00 |
| August 2006 | 114.10 | 19,780.00 | 11.50 | 18,562.00 |
| February 2007 | 54.40 | 11,001.50 | .60 | 10,971.50 |
| March 2007 | 36.75 | 6,315.00 | 6.80 | 5,295.00 |
| April 2007 | 67.95 | 12,175.00 | 2.40 | 11,925.00 |
| July 2007 | 22.30 | 5,332.50 | 3.00 | 4,882.50 |
| August 2007 | 18.40 | 4,308.75 | .50 | 4,233.75 |
| **TOTAL** | | $ 83,689.25 | 41.80 | $ 78,729.75 |

The burden is on Defendants to support their claim for attorneys' fees. *Spell v. McDaniel*, 852 F.2d 762, 765 (4th Cir. 1988). Because Defendants have not provided the court with information regarding the experience, reputation, and ability of the attorneys or other professionals involved for these billing amounts, the court will reduce the amount of attorneys' fees by the unsupported amounts (that is, the 41.8 hrs. in the Other Att'y Time column above) for a total adjustment of $4,959.50.

Finally, the court must also consider a number of additional factors and public policy considerations, and may adjust the award accordingly. Ordinarily, a court may be concerned that ordering a plaintiff "to pay attorneys fees and costs will chill lawsuits by future individuals who feel that their constitutional rights have been violated." *DeBauche,* 191 F.3d at 510-11 (4th Cir. 1999). In this case, however,

Plaintiff brought a completely baseless claim, filed a motion for a preliminary injunction, insisted on having a hearing on that motion, ignored court orders, and generally dragged this matter out over two years, resulting in considerable litigation expense to Defendants. Indeed, an award of attorneys' fees here "chills nothing that is worth encouraging." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).

Moreover, following his typical pattern, Plaintiff has chosen not to respond to the petition for attorneys' fees, so the request is unchallenged. As a result, the court has no evidence of Plaintiff's financial position. Nevertheless, a district court should not refuse to award attorney's fees to a prevailing defendant simply because the plaintiff has not responded to the request for attorneys' fees. This is especially true in this case, where Plaintiff has consistently failed to respond, ignored court directives, and continued to pursue baseless claims. The court also notes that Plaintiff, in 1986, brought an action against Case Western Reserve University, alleging that he was discriminated against on the basis of race and alienage. Summary judgment was granted to defendants, and the case was dismissed. Plaintiff, however, appealed the district court's denial of his motion for an extension of time to respond to the summary judgment motion. The Sixth Circuit Court of Appeals affirmed the district court's denial of the motion, finding no abuse of discretion. *Okocha v. Case Western Reserve Univ.*, No. 91-3963, 1992 WL 162561 (6th Cir. July 13, 1993). As in this case, Plaintiff in *Case Western* had filed numerous previous requests for extensions, and the last time the district court extended the

13

discovery deadlines, the court stated that no further extensions would be given. Nevertheless, Plaintiff filed another request, which the court denied. It is clear then that Plaintiff's actions in this case, eerily similar to his actions in the earlier case, represent his pattern of behavior.[6] It is the opinion of this court that Plaintiff cannot be allowed to continue to file frivolous lawsuits, engage in dilatory tactics, and then walk away with impunity. Plaintiff, while proceeding pro se, is not the typical uneducated pro se litigant. Indeed, he has a law degree and practiced law in the State of Ohio for a number of years before being disbarred.[7]

The court is aware that a large award of attorneys' fees on its face might discourage other potential plaintiffs, who have viable civil rights claims, from attempting to access the judicial system to obtain relief. The court must strike a balance between requiring Plaintiff to face the consequences of his actions which resulted in tremendous costs and expenses to Defendants, while not sending a

---

[6] As a practicing attorney, before his disbarment, Plaintiff was also sanctioned in other cases. In one such case, he brought an action against a school board in Ohio, alleging that his client was discriminated against on the basis of race and gender. As noted by the Sixth Circuit Court of Appeals, the district court dismissed the action *"with prejudice . . . for failure to prosecute and failure to respect the court's orders regarding further extensions of time." Johnson v. Cleveland Heights/University Heights School Dist. Bd. of Educ.*, No. 94-3523,1995 WL 527365 *2 (6th Cir. Sept. 6, 1995) (emphasis added). The district court also imposed sanctions against Plaintiff for "repeated discovery violations." *Id.* The opinion of the Sixth Circuit upholding the sanctions is indeed enlightening. As noted by the Sixth Circuit, "[Plaintiff] has been down this road before in the district court." *Id.* at *3. The court further cites at least three other cases where Plaintiff was sanctioned for similar behavior. It appears that Plaintiff learned nothing from these previous sanctions.

[7] *See Cuyahoga County Bar Ass'n v. Okocha*, 83 Ohio St. 3d, 697 N.E.2d 594 (1998) (disbarment order).

14

message to other more deserving plaintiffs, who rightly seek vindication of their rights, that they should refrain from bringing meritorious lawsuits. Plaintiff's claims here were meritless in both fact and law, and he continued to pursue the litigation knowing that this was the case. Moreover, as the previous cases cited show, Plaintiff has filed frivolous claims and engaged in delaying tactics on numerous other occasions. As such, the balance tips most decidedly in favor of granting a significant award of attorneys' fees to Defendants. Having reviewed the request in light of the twelve *Johnson* factors, the court recommends that attorneys' fees be awarded to Defendants in the amount of $164,250.50 ($169,210.00 - $4,959.50 = $164,250.50).

Defendants also seek reimbursement for the cost of the transcript of the preliminary injunction hearing. The Fourth Circuit Court of Appeals has held that out-of-pocket expenses incurred by attorneys in civil rights cases can be recovered under 42 U.S.C. § 1988 so long as they are "normally charged to a fee-paying client, in the course of providing legal services." *Spell*, 852 F.2d at 771 (4th Cir. 1998) (per curiam) (internal quotations omitted). Reasonable litigation expenses include such expenses as secretarial costs, copying, telephone costs, and necessary travel. *Daly*, 790 F.2d at 1083. Defendants here request reimbursement only for the cost of the transcript of the preliminary injunction hearing, $290.40. The court finds that this request is reasonable in light of Plaintiff's insistence on going forward with the preliminary injunction hearing in spite of contrary legal advice from his attorney and

the unlikelihood of success at that hearing. Therefore, the court recommends that Defendants be awarded this cost in the full amount of $290.40.

CONCLUSION

For all the reasons stated herein, it is therefore **RECOMMENDED** that the court **GRANT** Defendants' Petition for Attorneys' Fees and Costs (docket no. 94) and award attorneys' fees in the amount of $164,250.50 and costs in the amount of $290.40.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, North Carolina
February 6, 2009